Good morning, Counsel. Good morning. My name is Rachel Kinstrand. I'm from the Office of the State Appellate Defender, and I represent the appellant Keith Pinkley. Would you spell your last name, please? Sure. It's K-I-N-D as in dog, S-T as in Tom, R-A-N-D as in dog. Thank you. Good morning, Counsel. Good morning, Your Honor. My name is Judy DeAngelis. I'm an Assistant State's Attorney representing the people of the State of Illinois. How much time do you need for your argument? Well, depending on what defense counsel argues this morning, I would say no more than 10 or 15 minutes. Very good. All right. I want the attorneys to keep in mind that this is the only case we're hearing this morning. We feel that in order for the litigants to get all the process they're due, you can argue the case. We don't want to repeat your arguments, but keep in mind that we've read the briefs, so I would suggest that you get right to your argument. Thank you. You may proceed, Counsel. Thank you, Your Honor. Would you please, for my sake, would you please keep your voice up? I sure can. May it please the Court and Counsel, the statute at issue in this case, Section 115-10.1, allows for the introduction of prior inconsistent statements when a witness recants while testifying at trial. But this exception to the hearsay rule does not obliterate all of the other rules of evidence or allow the State an unfair advantage through the limitless introduction of the prior inconsistent statements. In this case, the State showed the jury the prior videotaped statement of Freddie Gies after he recanted at trial, not just during his testimony, but a total of three separate times during the trial. Similarly, the State introduced two prior inconsistent statements of another recanting witness, Boris Reynolds, after he recanted. This had the effect of elevating these prior inconsistent statements above the trial testimony. Instead of allowing the State to cope with the recanting, which is what the statute was designed to do, the repetition of this testimony had the effect of elevating it above what was said at trial and therefore gave the State a leg up on the defense. On the flip side of this coin, adding to the unfairness, the State was allowed to bolster its case with the hearsay testimony from the county paramedic regarding what a doctor who did not testify at trial said regarding Gies' injuries. And the defense was further prevented from inquiring into Laurice Reynolds' OPS complaint regarding his claim of police abuse during the interrogation. This was error and this Court should reverse. The videotape was brought in through Gies to prove up his impeachment, then published again through ASA Bischoff. Although this was objected to by defense counsel and raised in the post-trial motion, the trial court continued to allow it to be played. But the only need for the tape during Bischoff's testimony was really to show that the statement was made voluntarily. It didn't need to be published in its entirety a second time. Then, during rebuttal argument, the State played the portions of the tape at multiple points. You would never be allowed to do this with a live witness. You would never be allowed to bring in the same person to testify at three separate points during the trial to what he had already testified to. Counsel, do you have any cases that establish that the State is not permitted to do this? As I said in the beginning, I think with respect to this statute, although it's an exception to the hearsay rule, it doesn't obliterate all the remaining rules of evidence. In the cases that are cited to in the brief, each hint at the fact that the repetitive nature could be error if the delicate balance was tipped. So at what point was this balance tipped? I think the balance was tipped when it was played during ASA Bischoff's testimony. It really only needed to come in that one time. They could play it during Freddie Geise's testimony in its entirety. And it would have the exact same effect. All the ASA really needed to establish was that it was a voluntary statement. But you do agree that the rule permits the State to do what they did? I would agree that the statute doesn't have a limit, but I would say that the general rules of evidence still apply. You can't introduce cumulative or repetitive testimony because the jury has a tendency to believe that which is repeated. And here, you know, this was the last thing the jury heard. They heard it during rebuttal. They were also permitted to take the tape back with them. In fact, there's a whole colloquy right after the closing arguments where they discuss setting up the AV visuals in the jury room. Since the statute does not place limitations on how they can use their evidence, are you suggesting that this Court carve out a new rule? I'm not suggesting that the Court call out a new rule. What I'm suggesting is that the Court rely on the general rules of evidence, specifically the common law rules against repetitive and cumulative evidence that causes prejudice to my client. I mean, here, this trial really became about what was said four years ago. It became about the prior consistent statements, prior inconsistent statements of these individuals. And the State knew it right off the bat. I mean, right in opening argument, they told the jury that they didn't know what their witnesses were going to say on the stand. They also suggested that Keith's two brothers had a motive to lie because they sided with their brother and that Freddy Geis would rather be anywhere but testifying at trial. So they knew from the beginning that these prior inconsistent statements were going to count. I think the real question here is how much is too much? And in this case, the jury heard this over and over again. And the problem with it is that it's the jury's responsibility as a trier of fact to make a credibility determination. But if they hear the same inconsistent statement, particularly on videotape, over and over again, that tips the balance in the credibility determination because they're left with hearing the live testimony but then hearing the repeated use of these prior inconsistent statements. On the flip side of this coin, well, I'll get to Luis secondly because this was the other instance of the use of a prior inconsistent statement. So with respect to Freddy Geis, who is the co-defendant in this case, the State brought him a videotape three times. With respect to Luis's testimony, when he recanted on the stand and claimed that his brother had lied, that his prior inconsistent statement was the product of police coercion, the State was allowed to bring in and publish not only the statement made to the ASA during the interrogation, but also his grand jury testimony. And much like the videotape statement, this had the effect of unfairly bolstering the prior inconsistent statement and elevating it over what he said at trial. You know, really all they needed to show was that his prior inconsistent statement was different from his trial testimony. They didn't need to hammer that point home through two ASAs and then the court reporter that they brought in to testify regarding the grand jury testimony. On the flip side of this coin, adding to the unfairness to the defense, the State was allowed to bolster its claim that Freddy Geis was making up his story about being abused at trial by claiming that through the testimony of a paramedic, an examining doctor during the intake process didn't find any injuries on him. I mean, she specifically testified that there was nothing that they wrote about any trauma. This is a classic example of hearsay. And the State knew that bringing this testimony through the paramedic was significant because they referred to it in closing argument. The problem is this was testimonial. It shouldn't have come in through the paramedic at all. The paramedic testified that she was wearing a blue DOC uniform with patches on it. Clearly Geis knew she was part of the general law enforcement community, that she was acting as an agent of the law enforcement. And when she testified about his injuries and specifically was asked about this doctor's statement, the State had to know that having the doctor's statement come out in this way was going to add to its case because people generally think a doctor who takes an oath is almost unchallengeable. And I think it's significant that the State referred to this in their closing argument. Did the defendant object when this evidence was being presented by the State? The defendant did not object. The defendant should have objected, but I think this is still error. It's still error under both general hearsay principles and under Crawford. I think clearly the argument is that this is testimonial, that it shouldn't have come in, and it was relied upon by the State in their closing argument. I mean, here you really only had three witnesses who could put Keith Pinkley at the scene of this shooting. And all three of them recanted their testimony on the stand and claimed that Keith Pinkley was not involved in this crime. And so when you have these witnesses offering an explanation and the State being allowed to unfairly bolster their case by bringing in the prior inconsistent statements and bringing in this doctor's statement, I think it adds to the general unfairness of this trial. The second issue, or rather the last issue, is really the OPS complaint. And here the trial court ruled that Lorese's OPS complaint was a prior consistent statement. This ruling, with all respect to the trial court, doesn't make a lot of sense based on what happened at trial. I mean, as I said before, the State knew that its witnesses were likely going to recant. And clearly the entire tenor of the State's examination of Lorese Reynolds was to challenge his claim that his prior inconsistent statement was the product of police coercion. So when he, they were clearly charging that he was recently fabricating his testimony. And so when the defense counsel asked him about this, and he was allowed to testify that he was taken to West Suburban Hospital immediately after his grand jury testimony, this OPS complaint should have come in under the rule that allows prior consistent statements. And clearly the court knew that the subject matter related to the very same things that Lorese was testifying about on the stand, because it just couldn't rule that it was a prior consistent statement without knowing the nature of the complaint. In sum, your honors, this case is really about the fairness of the trial procedure. Here the State was allowed to bolster its case by repeatedly bringing in prior inconsistent statements. It was enhanced by the fact that it was on videotape, but it came in not once, not twice, but three times during the trial. It was the last thing that the jury heard, and it unfairly interfered with the jury's credibility determination. They're responsible for weighing the live testimony against what was said in the past, but not having to cope with what was said in the past at three separate times during the trial. On the other side of the coin, the trial court erred in allowing the State to unfairly bolster its case with hearsay testimony from a doctor that the State knew was going to likely be more credible in the eyes of the jury, even though the doctor and the paramedic were all part of the Cook County DOC. They were not impartial. They were part of the law enforcement. Lastly, the trial court erred when it failed to allow the defense counsel to bring in the OPS complaint. It was a prior consistent statement, yes, but it was made to rebut the charge of recent fabrication that the State was making on the stand. For these reasons, the trial court erred, and this Court should reverse. Counsel, I've noticed that you have not addressed the 431B issue in your brief. Are you standing on your brief with respect to that issue? I'm standing on the brief, but I would be more than happy to discuss the issue. No, you can elect to proceed however you wish. If you don't choose to argue that issue, but you're standing on your brief, that's fine. State cited People v. Johnson, and I can't see where you replied to that in any way. Did I miss something in your brief? What I said in response to Johnson and all of the other cases that they cited is that while there's not a limitation in the statute, I think in general, the rule still requires the general rules of evidence to apply. And the problem is I think since Johnson, this has become a matter of routine in these trials. The State basically gathers as many prior inconsistent statements in an attempt to lock in a witness that they fear might recant a trial. And while the statute was designed to allow the State to cope, it's not allowed to give them an unfair advantage. And I think all of the cases hint at this. I mean, I think they all say, you know, even if it's in dicta, that there's the delicate scales of justice can be tipped. And I think in this case, given what happened, we have that. You know, we have a situation where the only really the three witnesses that could place Keith Pinkley at the scene of this bus stop all recanted their testimony. And so the trial really became about what they said in the past. And it's really on the court to kind of rein this practice in. Thank you very much, Judge. Good morning again, Your Honors. May it please the court, counsel. I would first ask if there are any questions regarding the Zaire issue. I'd be more than happy to answer any questions you may have from our side. I'm standing on our brief. You can stand on your brief as well. Very good. Thank you. We will then. In response to defense's argument regarding the video, which they claim was shown to the jury multiple times, it sounds as if defendant is arguing that the assistant state's attorney continued to play the video in its entirety throughout the entire trial. And that is certainly not the case. As I had stated previously, and in order to bring in what was a proper prior and consistent statement, the assistant state's attorney asked Freddie what his answers were with regard to the various questions. The assistant state's attorney listened to his answer and then played that portion of the videotape. It did in fact then come in during assistant state's attorney Jeannie Bischoff's testimony and then came in again during rebuttal at different points. However, again, this is a witness that denied what he said in the videotape that was taken hours after the shooting and the state's attorney's office had the right to bring in this prior and consistent statement. Did you also use the video during closing argument? Yes. Yes, it was used during closing argument, again, in order to show that this witness in our mind was lying on the stand and that his prior and consistent statement was actually what he said. And that's what happened at that bus stop. We understand that the statute does permit the state to do it, but do you think that it was intended for the state to use these statements during closing argument, these inconsistent statements made by the defendant in this fashion? Yes, I do, Your Honor. The state has the burden of proof and the state had the right to show that this was part of the evidence that was brought into trial. Is the argument proof? The argument itself is not proof. No, Your Honor, but we had the right to show exactly what Freddie Geiss was doing in that courtroom and what he had said prior. Again, there was no objection and you have to remember... I'm simply raising the question, was it necessary during the closing argument to do it once again? Well, the assistant state's attorney in that courtroom felt that it was necessary in order to show, and again, they had the right to show there was no objection. This argument, as we have argued in our brief, every single argument raised by defendant is weighed. There was no objection and it has to be remembered that this videotape went back with the jury and there was no objection to that. So whether or not it was shown various times during trial, this jury could have watched it a thousand times in the jury room. So the defendant at trial did not feel that it was a problem and their argument on appeal should absolutely be forfeited as they, again, felt that it was not an issue at trial and it has not been preserved. With regard to what we'll call the Crawford issue regarding the paramedic, Victoria Furlow was not the only person that examined Freddie. Sol Brasurdo also did. And both witnesses testified that Freddie had no injuries. The defense attorney at trial was allowed to cross-examine the assistant state's attorney who was with Freddie in the room, all of the police officers, and there was nothing in this trial that could prove that this person was injured. And even if this court were to find that this was hearsay, and we are not conceding whatsoever it was, but even if it was, and even if you were to find that it was testimonial, and, again, we are not conceding whatsoever it was, but, again, we are not conceding whatsoever it was, we argued in our brief it was not testimonial, any error whatsoever is absolutely harmless, this was completely cumulative, and this doctor who examined Freddie was examining Freddie to see if he had a problem with bronchitis, because he had asthma. He was not in a position where he was examining this person as a government entity, he was just looking to see if, in fact, the patient had bronchitis. And the paramedic who took Freddie in had a right to believe that Freddie may have a problem with his asthma or bronchitis because the summer months were coming, and not because he was possibly injured while he was in the police station. So, again, even if this court were to find any possible error, we would find that the cases that we cited in our brief, especially people versus Stackley, this court would have to look at, would the objective circumstance be that Freddie had bronchitis? And if the objective circumstances have led a reasonable person to conclude, their statement could be used against the defendant. There was nothing here that you could conclude that, and once again, this issue has been waived. But, Consul, are you telling us that when the paramedic gave testimony in reference to a doctor's written statement, that that's not right hearsay? She did not give testimony regarding the doctor. What she said was the assistant state's attorney asked her if she saw any evidence of a doctor's written statement. She did not see anything on the doctor's report that showed that there was any trauma. And what she said was she didn't see anything on the report. So it may be a fine line, but she did not testify as to anything the doctor found. She just said, I don't see anything on his report. That is his report. The doctor's report, exactly. And that is a real fine line that we have to look at very seriously. But again, the doctor was only looking at Freddie to determine whether or not he had an issue with bronchitis. His report had nothing to do with this murder whatsoever. And again, as I stated, even if you were to go through all the different levels, as argued in our brief, there can be no other conclusion, but any possible error is harmless beyond a reasonable doubt. Especially given all of the other testimony and the cross-examination that was done by defense counsel, there is nothing in this record that can substantiate any trauma whatsoever to Freddie. With regard to the defendant's argument regarding Maurice Reynolds and his prior two inconsistent statements, we would take the position, as we did in our brief, that Maldonado People v. Johnson are, in fact, the controlling cases for this issue. And again, inconsistency is measured against trial testimony, not against other statements that conflict with trial testimony. And Maurice Reynolds gave a handwritten statement, he gave grand jury testimony, defense counsel talked about bringing in the court reporter. Well, the reason we had to bring the court reporter into trial is because Maurice Reynolds completely denied everything that he said about the trial. He said he had no idea who said that, and he completely denied ever saying it. So, of course, we had to bring in the court reporter to rebut his testimony. With regard to the OPS complaint, once again, as all issues have been waived, so has this. This was not included in the post-trial motion, and there was absolutely no offer of proof made at trial, even in the grand jury courtroom. Even though there was a statement made in defendant's rebuttal brief, there was nothing put on the record, and, of course, the defendant has the burden to supply this court with the record. There's no offer of proof. We have no idea what was in that OPS complaint, or if there was even an OPS complaint. Of course, as argued again in our brief, we argued that it was irrelevant, it was irrelevant, and, most importantly, it was a prior consistent statement that came out of the OPS complaint. It could not be used to bolster Laurice's testimony at trial. As we stated, this OPS complaint, if it did exist, arose after he gave his statement to the police, and we would say that, excuse me, that it was absolutely a consistent statement that was properly not admitted. But, once again, if this court were to find any possible error, it is harmless error, as Laurice was allowed to bring in during the trial. During that cross-examination, information regarding West Suburban Memorial Hospital and his visit, although defense counsel said that he immediately went there, I don't remember a statement in the record saying that he was immediately brought to West Suburban Memorial, but he said he went there to have the hospital look at his bruised ribs. State objected to that information coming in, but the trial court said no, he would allow that. Also, the defense attorney was allowed to cross the assistant state attorneys regarding Laurice Reynolds' statement, and as this court is fully aware, if the OPS complaint had been admitted, it would have only been allowed for rehabilitative purposes and not as substantive evidence. And, again, of course, we still have overwhelming evidence of the defendant's guilt. Thus, if there are no other questions, we would ask that the defendant, his conviction and sentence be affirmed, as he is not deserving of any relief on all of his forfeited claims. Thank you, Ms. DeAnne. Counsel, some rebuttal? I think it's clear from the record that the trial court knew what was in the OPS complaint. As far as putting it on the record, it was the trial court that chose to take it off and have a sidebar with both the prosecution and defense counsel. But it's clear that if he's ruling it's a prior consistent statement, even though I believe that it was erroneously excluded from the trial, he had to know that the trial court was going to take it off and have a sidebar with both the prosecution and the defense counsel. Counsel, address this argument. The state argues that even if you're correct, there's just overwhelming evidence of guilt. She says you have the burden of persuasion, the defendant failed to object during the trial, failed to raise this issue in his post-trial motion, you've got to persuade, given the fact that there's this overwhelming evidence as to how this prejudiced the defendant in this case. I think there's a two-fold response to that. I think first, when you really look at the evidence that was introduced at trial, what we have is a fight that occurred many hours earlier, and we have this bus stop shooting, and we really only have three witnesses, all of whom were counted at trial, that could identify Keith Pinkley as being there. And so that's why these evidentiary issues matter. If you're going to continually replay this prior inconsistent statement for the jury, if you're going to add two statements that were prior inconsistent statements of Laurice Reynolds, if you keep adding that stuff together, you get the state with an unfair advantage. Second of all, but the statute gives them that advantage or permits them to do what they did. And I think that while the statute doesn't have a specific limit in it, again, the rules of evidence apply. I mean, the state in their argument said they could play it 1,000 times. I don't think they can play it 1,000 times. I don't think you can parade the same piece of evidence before the jury multiple times and expect to have a fair trial. In this case particularly, it was on videotape. I mean, it had the effect of elevating these prior inconsistent statements that were made four years ago over what was said in the trial. Now, if we had a system where we could bring in only the prior inconsistent statements and convict on that basis, that would be one thing. But this is a trial with live testimony. The state brought in 17 witnesses. I mean, most of them were law enforcement people. When you really look at the evidence in this case, there was only three witnesses who actually put Keith Pinkley at the scene and all of them recanted at trial. So that's why the issue of the multiple playing of the prior inconsistent statement and Laurice's inconsistent statement, and on the flip side of that coin, the bolstering of it with the doctor's statement and the denial of the OPS complaint, that's why this stuff matters. I mean, what we have to consider is the overall fairness of the trial. With respect to the OPS complaint, I just wanted to address a few more things. The testimony from Laurice was that after his grand jury testimony, he was taken to West Suburban Hospital. This was clearly the entire tenor of the state's direct examination of Laurice was to infer that he was fabricating his claim that he had been beaten. Under the rule regarding the use of prior consistent statements, this should have come in, and it doesn't make sense for the court to allow in the testimony regarding West Suburban Hospital, but leave the jury hanging as to what this OPS complaint was about. The offer of proof was fine. I mean, the other side of people's that the state didn't quote in his brief was that if the trial court understands the substance and the material that's going to be offered, there's no need for anything more formal than that. And it was the trial court that chose to take this off the record. It wasn't defense counsel saying, let's take this off the record. I mean, by the very nature of the ruling, the trial court knew what was in there. Going back to the statements of... Yes, he was saying his prior inconsistent statements were the product of police coercion. Freddie Guy was making the same comment. He claimed that he was beaten. The state was allowed to bring in the testimony from the doctor to refute that. The brother, Jerese, was 16 years old at the time, and he consistently claimed that he was threatened by the police officers. I mean, he had some allegations of physical abuse. He claimed he put a hand on his neck. He also claimed he told him he was going to get 100 years. His trial, his mother testified, she's also Keith Pinkley's mother, that she was not allowed to see her son, that she went to the police station repeatedly. The lawyer for Jerese was allowed to testify at trial, and he claimed that he was not allowed to go in and see his client. With respect to Jerese, I think, you know, the defense counsel was able to bring in some evidence to support Jerese's claim. He was threatened, but with respect to these other two witnesses, the state just had a complete unfair advantage. I mean, they had this videotape that they repeatedly brought in, and then they had these prior inconsistent statements from Lerese. And then they weren't allowed to bring in the OPS report, and that should have come in. That should have come in because the state was charging that he was totally fabricating his testimony. And so if you have any more questions on that, I'll move backwards again to the next slide. I'll move back to the Crawford issue, to the hearsay issue. I think this is clearly hearsay, and I think the state tries to refute that in this brief, but I think in doing so, they ignore what happened that actually happened at trial. I mean, I think the fact that the state referred to this in their closing argument highlights why this was damaging. They knew that the doctor was going to be persuasive to the jury. That's the whole point of bringing the testimony in through the paramedic. The paramedics didn't claim that he was just checking them for bronchitis. The paramedics said it was medical conditions, but it was also any signs of trauma in the last seven days. Now, she didn't get a full exam of him. I believe she testified that she doesn't look at him from the waist up, and that there's another procedure for looking at them from the waist down. But I think clearly, if you were Freddie Geist, you're looking at her in her blue paramedics uniform with her DOC patches on her sleeves, and thinking, this is part of law enforcement. Same with the doctor. I mean, you're in the intake process for the Cook County Jail. This is not going to visit your family doctor in private practice. This is going to be examined by somebody who's a member of the general machinery of the state. This isn't somebody that Freddie Geist thought was on his side or that he could confide in. And I think when you take it in context and really consider how he might have viewed all of these individuals that he came in contact with, particularly Sal Basuto, who was the intake officer who was also clad in a Cook County uniform, I mean, you have to think that these people were acting as agents of the state and not as somebody who was working independently. Finally, as I said initially, with respect to the videotape, the state makes the claim that they could play it 1,000 times. I don't think they could play it 1,000 times. The issue is really about fairness here. The effect of playing that videotape over and over again was to elevate it above trial evidence. And this court is actually absolutely correct. I mean, you can't, this is the last thing that the jury heard. They were allowed to bring it into the jury room. They were allowed to see it in closing arguments. It was played in portions throughout the rebuttal closing argument. And it had the effect of unfairly elevating this inconsistent statement that was made four years ago above Freddy Geise's trial testimony. In effect, it elevated it above the live testimony and it interfered with the jury's determination as a trier of fact to really weigh out the credibility. Instead of allowing the state to simply cope, it gave them an unfair advantage. And for all these reasons, it's error and we would ask for reversal. Anything further? Nothing further.